IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JIMMIE MARK PARROTT, JR. | § | |
| VS. | § | CIVIL ACTION NO.  1:19-CV-475 |
| JONI WHITE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jimmie Mark Parrott, Jr., a prisoner confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Joni White, Vivian Davis, Yvette Hall, Tamina Brazil, Emma Davis, and Edward Delone.

This action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants have filed Motions for Summary Judgment.[1]  (Doc. #191 and Doc. #210.) Plaintiff filed Responses to the Motions.  (Doc. #192, Doc. #224, Doc. #228, and Doc. #233.) The Motions for Summary Judgment are now ripe for review.

Factual Background

Plaintiff alleges he had back surgery at a University of Texas Medical Branch (UTMB) hospital in Galveston on July 25, 2016.  Following a back x-ray two years later, a medical recommendation was allegedly made to assign Plaintiff to a smaller prison facility near the UTMB

---

[1] Although Defendant Delone has not been served and has not joined in the Motion, the Motion for Summary Judgment inures to the benefit of Defendant Delone as well.  *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the summary judgment motion filed by appearing defendants).

hospital. Initially, Plaintiff was assigned to a smaller prison facility, but on February 16, 2019, Plaintiff alleges Defendant Joni White, the head of the State Classification Committee, assigned him to the Stiles Unit. Although the Stiles Unit is close to the UTMB hospital in Galveston, Plaintiff alleges it is a large facility and he has to walk long distances to the pill window and the dining hall. In addition, Plaintiff contends that Defendants Vivian Davis, Yvette Hall, and Tamina Brazil, who are members of the Stiles Unit Classification Committee (UCC), gave him a cell assignment at the Stiles Unit that violated his medical restrictions.

Plaintiff alleges another x-ray of his back was done on March 19, 2019, and it showed that he had an urgent need for surgery. On March 28, 2019, Plaintiff alleges he sent Defendant Edward Delone, the Stiles Unit Practice Manager, a request for medical treatment. On April 5, 2019, Plaintiff saw Dr. Miller, who reviewed the x-ray. Plaintiff alleges Dr. Miller called the orthopedic department at the UTMB hospital in Galveston. Plaintiff was scheduled for an orthopedic appointment on April 16, 2019, as a result of the call, but the appointment was later canceled. Plaintiff alleges he was denied treatment on April 30, 2019.

On July 19, 2019, Plaintiff alleges he sent a letter to Defendant Delone complaining that Defendant Emma Davis, a nurse practitioner, had denied him medical care. Plaintiff states that he did not receive a response to the letter. On July 23, 2019, Plaintiff was brought to the orthopedic clinic in Galveston. Plaintiff alleges he wrote a letter to Defendant Delone that same day requesting to be reassigned to a smaller facility and for medication changes, but no action was taken. Plaintiff filed a sick call the next day, but no action was taken.

Plaintiff alleges he saw Defendant Emma Davis on August 5, 2019. According to Plaintiff, Defendant Davis refused to treat him and told him that TDCJ does not have the money for his back

surgery. Plaintiff alleges he wrote to Defendant Delone to complain about Defendant Davis, but did not receive a response.

On August 16, 2019, Plaintiff submitted a request for pain medication. Plaintiff had a tele-medicine appointment with a doctor from Galveston on August 19, 2019. Plaintiff alleges the doctor ordered pain medicine, but Plaintiff was denied that specific medicine by members of the medical staff at the Stiles Unit. Plaintiff alleges he saw Dr. Miller again on August 20, 2019. Dr. Miller called the orthopedic clinic in Galveston, recommended that Plaintiff be sent to a smaller facility, and recommended that Plaintiff be prescribed Gabapentin for pain. Plaintiff alleges no action was taken on the recommendations.

On August 24, 2019, Plaintiff states that he filed two requests for help, and he was told that he would not be reassigned to a smaller facility or given the specific pain medication he requested. On August 27, 2019, Plaintiff went to the hospital in Galveston for a nerve conduction test, but was allegedly denied treatment. Plaintiff also filed a grievance about the denial of the nerve conduction test.

Plaintiff alleges he submitted a sick call on August 30, 2019, but no action was taken. On September 1, 2019, Plaintiff wrote to Defendant Delone complaining about his medical treatment. On September 5, 2019, Plaintiff sent requests to Defendants Vivian Davis, Hall, Brazil, and Delone, but no action was taken. Plaintiff also filed grievances, but he alleges no action was taken on them.

Defendants' Motions for Summary Judgment

Defendant Emma Davis contends she is entitled to summary judgment because Plaintiff did not exhaust administrative remedies with respect to the claims against her before he filed this action. She also contends that the competent summary judgment evidence does not support Plaintiff's claim

that she was deliberately indifferent to Plaintiff's serious medical needs. Defendants White, Vivian Davis, Hall, and Brazil contend that they were not deliberately indifferent to Plaintiff's serious medical needs when they gave him prison unit and housing assignments because those assignments did not violate Plaintiff's medical restrictions. Defendants also contend that they are entitled to qualified immunity.

Standards of Review

*Summary Judgment*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Naranjo v. Thompson*, 809 F.3d 793, 806 (5th Cir. 2015) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

*Title 28 U.S.C. § 1915(e)*

An *in forma pauperis* proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous if it lacks an arguable basis either in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

A complaint does not need detailed factual allegations, but the plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. The plaintiff must plead facts that allow the court to "draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983.

In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

*Exhaustion*

Defendant Emma Davis asserts that she is entitled to summary judgment because Plaintiff did not exhaust administrative remedies with respect to the claims against her. Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The statute provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. Prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because exhaustion is a threshold issue, the district court may resolve factual disputes concerning exhaustion without a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The primary purpose of a grievance is to alert prison officials to a problem so that it can be addressed, not to provide notice to a prison employee of a possible lawsuit. *Johnson*, 385 F.3d at 522. Thus, it is not necessary for a prisoner to identify future defendants by name in the grievance in every circumstance. *Id*. at 517. Nor is it necessary for an inmate to allege a legal theory or every fact that would support a legal theory in his grievance. *Id.* at 517-18. "A grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id*. at 517.

The Texas Department of Criminal Justice, Correctional Institutions Division has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson*, 385 F.3d at 515. A prisoner does not exhaust administrative remedies by simply filing each step without regard for procedural requirements. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Plaintiff alleges Defendant Emma Davis denied him medical treatment on July 19, 2019, and August 5, 2019. Defendant Davis asserts that the competent summary judgment evidence demonstrates that Plaintiff did not exhaust administrative remedies with respect to those claims before he filed his Complaint (doc. #1), which was executed on September 23, 2019, and received by the court on October 7, 2019. Defendant's Exhibit A to the Motion for Summary Judgment consists of Plaintiff's grievance records from March 1, 2019, through October 31, 2019. Those records reflect that Plaintiff did not exhaust his claims against Defendant Emma Davis before he filed this action. In response, Plaintiff submitted copies of grievances purporting to show that the claims were exhausted. However, the records show that Plaintiff's claims against Defendant Davis were not exhausted until after he filed the Complaint. (Doc. #228 at 15-33.) Because there is not a genuine issue of material fact concerning the exhaustion of Plaintiff's claims against Defendant Emma Davis, her Motion for Summary Judgment should be granted.

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). First, the court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*,

369 F.3d at 863. Then, if a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff has alleged facts demonstrating that his constitutional rights were violated.

*Medical Claims*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was

exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendant was aware of an excessive risk to the plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Under exceptional circumstances, the defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer*, 511 U.S. at 842; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff alleges Defendant White assigned him to a prison facility that does not meet the requirements of his medical restrictions. Plaintiff alleges Defendants Vivian Davis, Hall, and Brazil subsequently assigned him to a cell at the Stiles Unit that was inconsistent with his medical restrictions, and that Defendants Vivian Davis, Hall, Brazil, and Delone did not take action when Plaintiff later notified them in writing that he needed to be reassigned. Defendants contend that Plaintiff's prison unit and cell assignments did not violate his medical restrictions.

Plaintiff's medical records reflect that Plaintiff never had medical restrictions on his facility assignment. (Doc. #191-3 at 205-206.) Further, at the time he was transferred to the Stiles Unit, Plaintiff did not have any restrictions on his basic housing or row assignments; he only had a bunk restriction, which required him to be assigned to a lower bunk. (Doc. #191-3 at 205-206.) Plaintiff also had medical restrictions preventing him from being assigned to work that would require walking more than fifty yards, lifting more than twenty pounds, or bending at the waist. (Doc. #191-3 at 205-206.) According to the affidavit of Defendant Brazil, who is employed as a Case Manager II with the Texas Department of Criminal Justice (TDCJ), the walking restriction only applied to Plaintiff's work assignment, not his housing assignment. (Doc. #189-1 at 2.) Defendant Brazil states: "Under TDCJ policy, housing assignments and work assignments are made according to different guidelines and procedures. The walking restriction does not affect where Parrott should be housed." (Doc. #189-1 at 2.)

Plaintiff's medical and classification records reflect that Plaintiff's restrictions were periodically reviewed and updated by members of the medical staff. On February 19, 2019, Defendant Brazil reviewed Plaintiff's medical restrictions and determined that his housing and job assignments were consistent with those restrictions. (Doc. #189-5 at 12.) On March 4, 2019,

11

Defendant Davis added medical restrictions to the allowable mode of transportation for Plaintiff, requiring him to be transported by van. (Doc. #191-3 at 205.) That same day, Defendant Hall determined that Plaintiff's housing and job assignments were consistent with his medical restrictions. (Doc. #189-5 at 11.) On May 28, 2020, a member of the medical department added work restrictions limiting Plaintiff to jobs that did not require walking more than twenty yards, climbing, or more than limited sitting. (Doc. #191-3 at 205.) In addition, Plaintiff's housing row assignment was changed to require a cell on the ground floor. (Doc. #191-3 at 205.) The next day, a member of the classification staff reviewed Plaintiff's cell and job assignment and made changes to comply with the restrictions. (Doc. #189-5 at 10.) On July 18, 2019, Defendant Emma Davis examined Plaintiff and determined that no changes were necessary to Plaintiff's medical restrictions. (Doc. #191-3 at 205.)

The competent summary judgment evidence does not present a genuine issue of material fact as to whether Defendants White, Vivian Davis, Hall, Brazil, and Delone were deliberately indifferent to Plaintiff's serious medical needs concerning his assignment to the Stiles Unit and subsequent cell assignments. Because the competent summary judgment evidence shows that Plaintiff's assignments were consistent with his medical restrictions, the evidence does not support a conclusion that Defendants deliberately disregarded a substantial risk of harm to Plaintiff. Defendants' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

Because Plaintiff has not shown that Defendants White, Vivian Davis, Hall, Brazil, or Delone violated his clearly-established rights under the Eighth Amendment, Defendants are entitled to qualified immunity. As a result, Defendants' motion for summary judgment should be granted.

*Personal Involvement*

Plaintiff has not demonstrated that Defendant Delone was personally involved in Plaintiff's medical treatment. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that the plaintiff must allege facts illustrating the defendant's participation in the alleged wrong to successfully plead a cause of action in a civil rights case). To the extent that Plaintiff alleges Defendant Delone violated his Eighth Amendment rights in connection with reviewing Plaintiff's complaints and grievances, such claims should be dismissed pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted. Plaintiff's allegations that Defendant Delone failed to address Plaintiff's written complaints is insufficient to state a constitutional claim because an inmate does not have a constitutionally-protected interest in having his prison administrative complaints resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Criollo v. Milton*, 414 F. App'x 719, 721 (5th Cir. 2011) (holding that a practice manager did not violate an inmate's rights by concealing evidence in responses to his grievances because the inmate did not have a liberty interest in the resolution of his grievances).

Recommendation

Defendants' Motions for Summary Judgment should be granted. Plaintiff's claim that Defendant Delone did not properly address his grievances should be dismissed pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted.

Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 14th day of February, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE